JOHN K. KEKAULA, Jr., *v.* EHU (w) and KAIA (k).

APPEAL FROM CIRCUIT JUDGE, THIRD CIRCUIT.

SUBMITTED JUNE 25, 1895.          DECIDED JULY 6, 1895.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE WHITING, WHO SAT
    IN PLACE OF MR. JUSTICE BICKERTON, ABSENT FROM ILL-
    NESS.

The Court will not enforce the performance of a contract to convey
    land obtained by misrepresentation and deceit.

OPINION OF THE COURT BY JUDD, C.J.

This is a bill in equity for the specific performance of an
alleged contract in writing for the sale of land.    It was heard
by Hon. S. L. Austin, Circuit Judge of the Third Circuit, who
dismissed the bill.    Following is his decision.

"The plaintiff seeks by a bill in equity to enforce the terms
of an alleged written contract for the sale of undivided interests
in certain lands at Naalehu, district of Kau, Island of Hawaii,
descended to defendant Ehu from the estate of Naonoaina.

The substance of the agreement which is in the Hawaiian
language, is as follows: 'I have received from John K. Ke-
kaula of Naalehu, Kau, Hawaii, $20, it being a part of $30,
the purchase price of my undivided right, in the property of
the estate of Naonoaina granted to him and Hilinai by Royal
Patent No. 2728, consisting of 336 acres, situated at Poupou-
wela and Aemale, District of Kau, and the kuleana No. 8754
of Naonoaina in that tract of land at 'Kaunamano.'

And after the payment of $10, the balance of the purchase
money, then I will for myself and heirs give a good and lawful

deed for the land above named to John K. Kekaula, and his heirs and assigns.

|  |  |  | her |
|---|---|---|---|
| (Signed) | Ehu Kaia | X |
|  |  |  | mark |
| Hoike |  |  | his |
| Kala Pilipo |  | Kaia | X |
| Namakakaua (k)' |  |  | mark |

From the testimony of Kala Pilipo and Kekaula the plaintiff it appears that Kekaula who lives near the land in dispute, having learned of Ehu's interest in the land wished to purchase the land, he got Kala Pilipo to go with him and show him where Ehu lived; they traveled about thirty miles to Kapua, South Kona, to the house where Ehu and her husband lived. The old folks were sitting under a kukui tree in front of the house. Kekaula told Ehu and Kaia that he had come to buy land. They consented; the agreement was then produced and then Ehu and Kaia accepted the agreement and money $20. Kekaula told them there were $10 more. Kala Pilipo says he then signed their names and drew their marks while they held the pen and scribbled along. This witness said on cross-examination, 'I saw the paper first when Kekaula gave it to me to sign as witness.' Kekaula testifies that he took pen, ink and paper with him, and drew up the body of the agreement, then and there, on the mat in the presence of Ehu, Kaia, Kala Pilipo and others. That a map of the land was shown and Ehu and Kaia looked at it. 'That the testimony of Kala Pilipo that the agreement was not drawn up by me there is not true.' Kekaula also says, 'I told them their interest was worth $30; did not tell them it was not worth *more* than that. They admitted I was a moopuna. They said we will sell for what you intend to give.'

Ehu, Kaia, Kaholo and Aleale all agree substantially in their testimony, that on the first visit of Kekaula to buy the land, Ehu told him she had no land to sell. That any right to land she might have belonged to her moopuna Losinahama in Kau.

That Kekaula urged her to sell, and she refused; that after repeated urging on his part, she reluctantly took the $20, and told him if Losinahama consented it would be a sale, but if Losinahama did not consent, the money, $20, would be returned.    The witnesses for defense all swear that Kala Pilipo on May 6th signed all the names to the alleged agreement; that Ehu and Kaia did not make their marks, nor did they put their hands to the pen when Kala wrote their names.

On the 30th of May, 1893, John K. Kekaula came to Ehu's house with J. H. Waipuilani, a notary public, and wanted Ehu to execute a deed.    She refused to do so, and offered to return the same $20, which Kekaula refused to take.    It is in evidence that Ehu's portion of the land is worth $800.

The main question for me to decide is, whether the alleged agreement made May 6th, 1893, is an agreement which equity ought to enforce?

From a careful study of all the evidence in this case, I find that John K. Kekaula, a smart man of business, having learned that an old and simple woman, named Ehu, had fallen heir to a piece of land near his own possessions in Naalehu, Kau, drew up an agreement to sell, procured a guide, and traveled a distance of thirty miles to a place called Kapua, in South Kona, where Ehu lived, and there tried to purchase her land.

The weight of evidence is that Ehu refused to sell the land, saying that any right to land which she might have belonged to her moopuna Losinahama, but he insisted upon her taking $20 as part payment.    Then his guide, Kala Pilipo, signed the names of Ehu and Kaia and made their marks.    They both swore that they did not touch the pen, and also signed his own name and that of Namakakaua as witnesses.

Kala Pilipo himself says Namakakaua did not make his cross. Kekaula's statement that he wrote out the body of the agree- ment there before all of them is denied by all the witnesses, and by Kala Pilipo, Kekaula's own witness.

I think an agreement such as has been proved is void for

want of proper execution, and it is certainly voidable on account of the ignorance and age of Ehu and her husband.

The contract cannot be enforced in equity, and Losinahama had a right to purchase the land as she did, notwithstanding her knowledge of an alleged agreement which was void and could not be enforced either in law or equity.

I dismiss the bill, and give judgment against the plaintiff for all the costs in the case."

The case on appeal was presented to us by complainant's counsel *ex parte*, there being no appearance on behalf of respondents.

On a careful review of the evidence sent up, we are of opinion that the findings of fact of the Circuit Judge are sustained and we find his conclusions of law are correct.

Advantage was taken of the old age, infirmity and ignorance of these two Hawaiians living in a remote and almost uninhabited portion of the Island of Hawaii, who were urged to consent to the sale for $30 of an undivided interest (the proportion of the interest not being disclosed); in two tracts of land in the neighborhood of a large sugar plantation, one piece being 336 acres in extent, and the other 3 7-10 acres. The old people were ignorant that they had any such interest, and it was shown that the twenty dollars advanced were thrust upon the old people, who were afraid to take it, and who finally and reluctantly consented to sell the land if their moopuna or granddaughter Losinahama, not then present, and who supported them, should also consent. The old people could not read nor write; the old man, Kaia, was partially blind, and they say that the formality of placing their hands on the pen when their cross-marks were made by the subscribing witness Kala Pilipo did not take place. This witness also wrote the name of one "Namakaokaua" as a subscribing witness below his own, and did not even have Namakaokaua affix his cross-mark. This last named man was not produced as a witness in the case. We notice also that on the copy of the alleged agreement, filed with the bill as an exhibit, this name does not appear.

Counsel for complainant appellant makes the point that the respondents are concluded by their first answer, where "they admit that they signed an instrument which they are now informed and believe constituted a contract to convey said interest in said lands," etc.

This original answer was prepared and signed by counsel upon information at a distance from their clients. An amended answer was afterwards, but before hearing, filed, in which "they admit that their names were signed, but by a third party and not at their request, to an instrument in writing which they have since been informed and believe was an agreement to convey such lands." Both the original and amended answers contain allegations that they were induced to do as they did through ignorance and misunderstanding of the matter, occasioned by the deceit and misrepresentation of the complainant. Under the circumstances it would not be right to hold the respondents to the allegation in their first answer.

The decree dismissing the bill is confirmed.

*E. Johnson*, for complainant.